Mr. Goldberg. Thank you, Your Honor. My name is Dan Goldberg and I represent Keith Hardin in this appeal. This court should enter a judgment and quit on this case because the government failed to prove an essential element of the felony in possession of a firearm conviction. This court concluded in the Counts case 2006 that, quote, to obtain a conviction under 18 U.S.C. 922G, the government must prove that the gun satisfied the federal definition of a firearm. 18 U.S.C. section 921A3 defines firearm as, quote, any weapon, including a starter gun, which will or is designed to or may readily be converted to explode projectile by the action of an explosive, end quote. Here there was no evidence presented to the jury about the gun. The jury didn't get to see the gun, even though the district court judge urged the prosecutor to show him the gun. No expert witness was called to testify about the gun, nor was cross-examination allowed regarding the gun. Mr. Hardin didn't even get to testify in his own defense about the gun. So I think it follows as a matter of belief that the gun was a firearm. The district court's ruling in keeping all this evidence out was simple. What once was a gun is always a gun. But this is an incorrect legal ruling as a matter of law. In the Davis case, this court's case, well, I'm not quoting him, but I think he paraphrased similar statements in the record. Wouldn't that be correct under the definition, even if he did say that it's designed to expel a projectile by means of an explosive? That being designed, whether it changed later, it's still a gun. This court concluded, I think in the Davis case, this court noted that a question of fact is, quote, whether the gun was damaged in a way that fundamentally altered its original design. And that's the case cited to the Rivera case, the Second Circuit case. And there's a Seventh Circuit case, the Dotson case, I think a very well-reasoned case by Judge Posner. And even the government concedes on appeal that a firearm, or I should say a gun, can come so dilapidated that it's just a piece of junk. Right? And that it can't satisfy the definition of the firearm anymore. What the government fails to explain is how the defendant gets to ever tease out that information for the government. Because it's their burden to prove this element beyond the reasonable doubt. And I think the problem here is it's undisputed that this gun had missing internal parts, didn't have a trigger that was working. The jury never got to hear that evidence. So I think it really implicates a lot of core constitutional rights here. I was drawn to the line and they have counts that says the gun there was not the pet or the car. I think the court excluded that evidence under the 403. It was a firearm. In the counts case? Yes. So it can't be that whatever this is, this gun is damaged. That your pet, the dog, hasn't seen the damage. Now, maybe if you have the gun, it's a pet, not important. So it's just a toy. You're a liar. You can jump in the quill. But, where can you propose that the line is drawn? I think it's a fair question, Your Honor. I think one of the fundamental flaws with the district court's ruling is that defense counsel didn't even get to offer an evidentiary offer of proof. I mean, that's really problematic here because it's an incomplete legal record here. Not enough, I'd say. We know that it's missing internal parts. There's a document, an exhibit, 502. It's in the record. I put it in our exhibits that have been sent to this court. But it's not enough. What does the exhibit 502 show? Why isn't that enough? It shows what's wrong with the gun. It says that it did not function due to a broken trigger and numerous missing internal parts. Why that's not enough is because we have a right, I think, to demonstrate via evidence how that gun was deficient. And there's more that could be said by an expert witness as to whether or not, and let me give you an example. The Dotson case, okay? That's the Seventh Circuit case where there was an issue about the gun. And at trial, guess what the government did? They called an expert witness who opined that it could be repaired within an hour. We don't have a similar record here. The government could have put that evidence on at trial. It failed to do so, and I think that's a fatal flaw here. And I think it raises the real specter out here that this gun could not be rehabilitated to ever work as a firearm. And the government can't foreclose that fact here. So I think Congress could have defined the term firearm differently. For example, the government argues about there's a risk of violent response to a non-functioning firearm. Well, that doesn't work here because in that case, there were, it was your case, it was analyzing an armed robbery statute. So I think there's two other red herrings I want to touch on briefly that the government relies on. The issue that it's confusing to the jury. This is not confusing. Again, you can get an expert up there to testify whether or not it can be repaired or not. The other, I think. There has to be some idea that it can expel a projectile, right? Well, it's designed to expel a projectile. But I think circuit courts throughout the nation have agreed, and even the government has conceded, that a piece of junk, even if it's designed, if it gets run over by a Mack truck, it no longer is a firearm, right? I mean, I think that would put a strain on the statute that it can't bear. And circuit courts throughout the nation had acknowledged that. The other issue is the stipulation entered into the parties. And that was about interstate commerce. I just don't think that gets the government anywhere. Nowhere in that stipulation does it say that it was a firearm or that it met the definition of a firearm. So I think this is a problem for the government. I was not. I think that's incorrect. I don't think there was any such concession. You can go to the stipulation, and it says that it's a gun. It was a .380, right? But that's the extent of the concession. And the point of the concession was that it's traveled interstate commerce, the origin of the firearm. That's a different element altogether. I think the appropriate remedy here is to bar further prosecution, remand it, and enter a judgment of acquittal. But alternatively, at a minimum, I think we need to remand for a new trial. Because this implicates his core constitutional rights to be found guilty beyond a reasonable doubt, to testify on his own behalf. And especially because of this offer of proof issue. He wanted to put up this witness, Robert Smith, to testify specifically as to what was wrong with the gun. And I think that's really problematic because there's no rule that says you have to make an offer of proof prior to trial. That's just not supported. The government doesn't argue that. I'd like to turn briefly because I don't have much time to issue three. I think alternatively, this sentence needs to come back for remand because Mr. Hardin is not an ACCA offender. The government concedes, quote, it is not entirely clear from the record which of Hardin's felonies the court found to be violent felonies, end quote. I think that's dispositive of the issue. If it's not clear, we need to send it back. And notably, one of his convictions was for burglary, which, of course, this court is reconsidering whether or not is a violent felony. I'd like to reserve the remainder of my time for a little rebuttal time, if that's all right. Thank you. Your Honor, there's a whole lot of accusations about what the government concedes, and I don't agree with about 90% of them. What I can tell the court that this case is about is exactly the Count's case. It's exactly the Count's case. The problem is, is that Mr. Goldberg apparently has the same failure that the trial counsel had, which is the inability to understand the distinction between operability and how it was manufactured. Those are two distinct differences. In the Count's case, this court made it very clear that Judge Guyton's ruling that the evidence of the firearm operability being irrelevant to determine whether the weapon was a firearm was a mistake. This court ruled that. But what this court then said was the reason that was a mistake is because of the fact that the issue of operability and how it's manufactured are two separate things. The ruling in this case was that you are not going to talk about operability because operability by this court's longstanding rules is not relevant to the issue of felon in possession of a firearm. What the defense continues to fail to do is distinguish between that issue and the as-manufactured issue. I will concede openly, Mr. Goldberg, that the record is confusing as to whether or not trial counsel ever actually conceded that the gun was manufactured as designed. There's about four or five references in the trial transcript, which is only like 115 pages, where that issue comes up. And it is hard to say in complete fairness whether or not that was ever conceded. But what is not in doubt is that, as in the Count's case, there was never an effort to present to the court or the jury evidence that the gun was not manufactured to expel a projectile by means of an explosive. There was absolutely an effort to argue operability, but that was shut down by the district court because of the fact the rules and the law is very clear on operability. What about the Lent case? Are you saying that because those guns were originally designed to expel a projectile, the damage to them is irrelevant? What the appellant is now trying to say, which is that this stipulation was only for the purpose of where the gun was manufactured, that may be, in fact, what the intent might have been. But the evidence was in front of the jury that the firearm was manufactured, that it was manufactured as a firearm. It's very clear in that stipulation that it was a firearm. You could have a stipulation that an object was designed as a firearm and it was manufactured by a manufacturer. Yes, sir. Or that it was not put in the barrel and used as a product. You could stipulate to those things. We did not in this case. It was not a consistent stipulation that it was manufactured to be a firearm to expel a projectile. I see your point. It's been fundamentally altered. You're correct. But there was nothing like that in this case that it was fundamentally altered. But that's not what they offered, not what they tried to do. What they tried to do was put on evidence that it was inoperable. They wanted to do it through the defendant, for the defendant to say, hey, I thought it was okay to possess this as a convicted felon because it didn't operate. They wanted to put on a witness from the crime lab to say, hey, this gun doesn't operate. They never offered to or wanted to put on or there's never any evidence submitted about the fact that this gun was not manufactured as it was designed to be. Suppose the case was a match shot by the federal. And I'm going to put on a witness to say the damage caused by the match shot flattening this gun makes it so that it can never be used again as a general projectile. It's spelled projectile. Are you saying that's inadmissible? No, sir. I'm not saying that's inadmissible. What I'm saying, Judge, is those are two different issues about operability versus as manufactured. No, I don't understand that. Well, Judge, in count... The gun that was run over by the truck wasn't manufactured to expel a projectile. That's correct, Judge. Now it's not operable. That's correct. They want to put on evidence that it's inoperable because it's been smashed. But the distinction in counts is that those are two separate issues, the difference between operability versus as manufactured. And the case law out of this circuit is very clear also that those distinctions. I don't dispute, Judge, that if you had evidence and you proposed that evidence as either an offer of proof or as a witness that the gun had been changed from its style, from how it was manufactured, that would be admissible. I don't dispute that. But that's not the situation here. How do you know that's not what he was going to testify to? Because they said what they were going to testify to. And what they were going to testify to, they have it, the 502 is an actual report, and the record, I was there, and the record is very clear, and my recollection is very clear, along with what the record says, which is that he was going to testify that the gun was not operable. And that was the ruling against him. I'm having a hard time seeing your distinction between the gun's not operable and the gun's been damaged so badly that it's not operable. Because of the fact, Judge, is that the distinction from, is counts. And counts is the seminal case on this particular issue because it is right on point with the exact facts in this case where you have a judge ruling that operability is not going to be talked about. The statement of the court was what the court took issue with, but the court still upheld the ruling because the court made the distinction between the as manufactured versus the operability issue. Because of the fact, Judge, you can have a firearm that is illegal to possess that is not operable. The only exception, Judge, with respect to possessing a firearm as convicted felon is if the firearm that was manufactured as a firearm has now been converted into something that's not a firearm. All right, when does that happen? That happens, I guess that would happen. I mean, the example I think Mr. Goldberg viewed, which came out of one of these cases, was I think one of the judges, and I don't remember who it was, proposed that if you had a gun that had been turned into a lighter. That would be an example where the gun was no longer in the style of what it was manufactured for, which was to expel a projectile. What if it's just been an old, bad truck? I don't know, Judge. I don't know the answer to that. So the other issue, Judge, is the fact of the Armed Career Criminal Act. And with respect to that, Judge, speaking of Brett Harrings, I think it was a statement that got thrown out, is the ACCA, with respect to robbery first, there was a conviction for robbery first, and in conjunction with that, there was also a conviction for burglary and also a conviction for sodomy. Along with the sodomy conviction was a conviction for the Missouri version with a weapon, the criminal act. And the confusion at the sentencing was the fact that contrary to the opening brief of the defense, there is no issue in the record that indicates the judge based his ruling on that felony. Can I ask you about this 1976 robbery statute? Yes, sir. There are two parts to it, and I don't know what it's like, the second degree robbery statute. Not that it's involved in the bill, but it says, felonies have been taken properly from another person by violence to this person or by putting him in fear of some immediate injury to this person. That second property, does that meet the test of the violent force? The argument for the government is the fact that the charge that he was convicted of meets the new definition of the force clause of the Armed Career Criminal Act. We believe it does. Candidly, Judge, that issue about whether or not the old, the archaic robbery one still fits that is a very, in my opinion, is a very technical analysis of multiple statutes over the last, I think that's 35 years, if my math's right, maybe it's longer. Does the or clause involve threatening to use force or violent force? I'm sorry, I thought I answered that. My point was trying to answer that. My answer is yes, I believe it does, Judge. I apologize if I didn't answer the question. I believe it does. My point was, and my time's about to run, but my point that I got apparently sidetracked on was the fact that when you look at those decisions, I believe our brief has laid out a step-by-step process to how to get to that decision today. I recognize that when the law starts changing over a period of 35 years, it makes it difficult to do that, but I do believe our brief does that. What are the three anomalies that you say qualify? The robbery first, the sodomy, and the burglary. I recognize the burglary is at an issue currently, Judge, because that's on a, I think it's on an en banc situation. That went against you, the en banc decision. You're correct. We're out. There's no dispute. Very clearly, Judge, that's actually correct. Let him finish the question. Okay, I'm sorry. Do you agree that we should send it back for reassessment? Unfortunately, I have to agree with that. That is absolutely true. The reason why is that while there is some dispute between the parties about whether there was a discussion about the Missouri criminal action statute that went around with the sodomy, the reason that's a red herring is because that statute sucks out only the elements of the crime that goes with it. Therefore, since sodomy is, that particular sodomy is violent, then the ACC. But they happen at the same time, so you can't count them separately. One other question, just out of curiosity. The federal definition of firearm, did that change at some point? Because I recall, at least when I was an AOC, I thought we always had to prove the gun was operable. Judge, I don't know if there was a change or not. What I do know is that the Eighth Circuit law, for as long back as I've gone in, I think it's into the early 90s, have said that operability is not an issue. I will say this. In Missouri, although I'm not a Missouri lawyer, in Missouri, it is my understanding that when they file a firearm charge, they do have to prove operability. All right. Let's see. A little bit. One minute. Thank you, Your Honor. I think the government makes a distinction without a difference here. And the core issue, and the government insinuates that we misrepresent their position, let's just quote the brief, page 22. If it were a heap of twisted metal, barely recognizable as having once been a gun, no longer useful for any purpose, even intimidation, the issue would have been different. But that's not the case here. Problem is, we don't know what the case is here, because we didn't get to put on our operable proof. The government also doesn't touch on the Davis case. I think the trial counsel suggested it was all about the testimony. One of them said it was all about operability. I don't think so. I don't think it's clear on the record. I think it's what would have been clear. Let me ask you this. Did he suggest that what the testimony would be would be that the trigger was probably the universal use of force? I think there is a suggestion. But I think the whole point of an offer of proof, obviously, is to be able to get into those details. And because the record's incomplete here, that's really problematic to just presume, especially when there's no basis for the district court's ruling. Why not have the offer of proof for this court? Why would you get a new trial because there wasn't an offer of proof, or if the offer of proof is inadequate to justify anything different than what happened? Because it violates his fundamental rights. He didn't get to testify about the nature of the gun. He didn't get to cross examine the witnesses about the gun. He didn't get proven beyond a reasonable doubt that it met the federal definition of a firearm. That's hugely alarming, I think. All right. Thank you for your argument. The case is submitted, and the court will file a ruling in due course. That concludes the argument calendar for the day. The court will be in recess until 9 o'clock tomorrow.